IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| S&B VENTURES, LLC )<br>)<br>and )<br>)<br>BRAIN DEV 2, LLC, )<br>Plaintiffs, )<br>)<br>v. )<br>)<br>BLACKBOARD INSURANCE COMPANY, )<br>Defendant. ) | Case No. 4:21-cv-00791-RK |

## ORDER

Before the Court is S&B Ventures, LLC's and Brain Dev 2, LLC's (collectively, "Plaintiffs") motion for default judgment. (Doc. 6.) This is an insurance coverage action alleging breach of contract and vexatious refusal to pay a claim pursuant to Mo. Rev. Stat. §§ 375.296, 375.420.[1] (Doc. 1.) Blackboard Insurance Company ("Defendant") has not filed a response and the time to do so has expired. For the reasons set forth below, Plaintiffs' motion is **GRANTED**.

---

[1] Section 375.296, RSMo., provides:

In any action, suit or other proceeding instituted against any insurance company, association or other insurer upon any contract of insurance issued or delivered in this state to a resident of this state, or to a corporation incorporated in or authorized to do business in this state, if the insurer has failed or refused for a period of thirty days after due demand therefor prior to the institution of the action, suit or proceeding, to make payment under and in accordance with the terms and provisions of the contract of insurance, and it shall appear from the evidence that the refusal was vexatious and without reasonable cause, the court or jury may, in addition to the amount due under the provisions of the contract of insurance and interest thereon, allow the plaintiff damages for vexatious refusal to pay and attorney's fees as provided in section 375.420. Failure of an insurer to appear and defend any action, suit or other proceeding shall be deemed prima facie evidence that its failure to make payment was vexatious without reasonable cause.

Section 375.420, RSMo., provides:

In any action against any insurance company to recover the amount of any loss under a policy of automobile, fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance except automobile liability insurance, if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount

**Background**

Plaintiffs filed their Complaint on November 3, 2021. (Doc. 1.) Defendant was served by mail pursuant to Federal Rule of Civil Procedure 4 and Missouri Supreme Court Rule 54.16. (Doc. 3.) Defendant acknowledged receipt of the summons on November 11, 2021. (*Id.*) Defendant failed to answer or otherwise respond to Plaintiffs' Complaint; thus, on December 20, 2021, the Clerk of the Court entered an Entry of Default. (Doc. 5.) "Upon default, the factual allegations of a complaint (except those relating to the amount of damages) are taken as true." *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damage – is admitted if a responsive pleading is required and the allegation is not denied."). Defendant has further failed to answer or otherwise respond to Plaintiffs' motion for default judgment. Accordingly, the Court accepts the allegations in Plaintiffs' Complaint as true and "consider[s] whether the unchallenged facts constitute a legitimate cause of action." *Murray*, 595 F.3d at 871 (citation omitted).

The factual allegations in Plaintiffs' Complaint are as follows. Plaintiffs held an active insurance policy with Defendant from March 31, 2020, through March 31, 2021. (Doc. 1 at ¶ 12; Doc. 1-1 at 17.) Plaintiffs – S&B Ventures, LLC and Brain Dev 2, LLC – were both "Named Insured" in the insurance policy. (Doc. 1 at ¶ 14; *see also* Doc. 1-1 at 200.) The insurance policy was "an all-risk property policy which insure[d] against all types of direct physical loss or damage subject only to a handful of enumerated exclusions." (Doc 1 at ¶ 16.) Loss due to vandalism or theft by unknown third parties was not excluded under the terms of the policy, although the policy did exclude theft by employees or authorized representatives. (*Id.* at ¶ 19; Doc. 1-1 at 42.)

Over a period of two months, Plaintiffs suffered two break-ins relevant to the instant insurance coverage action. (Doc. 1 at ¶¶ 3, 21, 23 n.1, 24.) The first break-in occurred on or about December 14, 2020, when individuals broke in through an exterior garage door, resulting in the theft of copper wiring and electrical components. (*Id.* at ¶ 21.) These individuals also "vandalized electrical, mechanical, and other equipment, including but not limited to power conduits and heating and cooling systems." (*Id.*) The second break-in occurred on or about January 19, 2021, resulting in the theft of the "remaining copper pipe and wiring from electrical closets." (*Id.* at

---

of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict.

2

¶ 24.) The individuals responsible also "tore out the water lines, stole the fire extinguishers, took the valves and electrical meter, and gutted the remaining mechanical equipment for anything of value." (*Id.*)

Plaintiffs' insurance policy had two categories of "Covered Property" relevant here: Real Property and Personal Property. (*See id.* at ¶ 17.) Real Property included (1) building or structures; (2) temporary structures; and (3) permanently installed machinery, equipment, furniture, and fixtures. (*Id.*; Doc. 1-1 at 22.) Personal Property included (1) furniture and fixtures; (2) machinery and equipment (including contractor's equipment); and (3) merchandise, stock, supplies, raw materials, and finished goods. (Doc. 1 at ¶ 17; Doc. 1-1 at 22.)

After the break-ins, Plaintiffs "provided timely notice of the December 14 and January 19 theft losses to [Defendant] and requested indemnity coverage under the [Insurance] Policy." (Doc. 1 at ¶ 26.) Defendant "assigned the Claims to Sedgwick Risk Management ('Sedgwick') for investigation and handling." (*Id.* at ¶ 27.) After several months, and more than one site visit by Eddie Townley, an independent adjuster Defendant hired to inspect the loss location, Defendant "provided [Plaintiffs] with a preliminary estimate of the damages for the Claims and requested that the [Plaintiffs] submit amended sworn proofs of loss if they agreed with the amount of loss." (*Id.* at ¶¶ 36, 37, 40.) Plaintiffs "provided executed proofs of loss the following day." (*Id.* at ¶ 41.) As of November 3, 2021, Defendant "ha[d] not provided its coverage position to the [Plaintiffs] or remitted payment, despite the Policy's express condition requiring Blackboard to issue payment for covered damages within thirty (30) days of receiving signed proofs of loss." (*Id.* at ¶ 48; Doc. 1-1 at 48.) On or about February 10, 2022, Plaintiffs received two checks from York Risk Services Group, Inc. in the amount of $91,187.58 and $76,650.02. (Doc. 6 at ¶ 15.) Plaintiffs believe these "payments were based on preliminary estimates of the then-known damages created by [Defendant] at the time of its site inspections in August 2021." (*Id.*) These payments have been credited to Defendant. (*Id.* at ¶¶ 13, 15.)

Plaintiffs seek a total judgment of $412,283.04 from Defendant. (*Id.* at ¶ 13.) This amount represents "unpaid property damage losses in the amount of $399,268.54, and attorney's fees and costs totaling $13,014.50." (*Id.*) In support of these damages, Plaintiff submitted affidavits of Andrew Brain, co-principal of the LLC Plaintiffs, "attesting to the total property losses" and of Noah Nash, counsel for Plaintiffs, "attesting to the outstanding legal fees and costs incurred by the [Plaintiffs] in this action." (*Id.* at ¶ 14; Docs. 6-5, 6-6.)

On May 10, 2022, the Court ordered the record be supplemented as to the following matters:

(1) The Complaint alleges "Blackboard, provided the Insureds with a preliminary estimate of the damages for the Claims and requested that the Insureds submit amended sworn proofs of loss if they agreed with the amount of loss." According to the Complaint, Plaintiffs then provided executed proofs of loss. Plaintiffs are ordered to submit documentation of:

   a. the amounts that were reflected in the preliminary estimate and in these proofs of loss

   b. what was required from the parties under the Policy if there was disagreement as to the amount of loss

   c. whether the executed proofs of loss total $567,106.14 (the property damage losses amount sought in the motion for default judgment plus the amounts already paid by York Risk Services Group in February of 2022)

(2) Plaintiffs are ordered to submit documentation of any communications that took place between the parties as to the amount of loss, amount of coverage, and any other matters relevant to the claims that form the subject matter of this case between the site visit(s) by Defendant's agent and the February 10, 2022 payments from York Risk Services Group.

(Doc. 7.) Plaintiffs supplemented the record accordingly on May 23, 2022. (Doc. 8.)

The preliminary estimates of the damages for the Claims provided by Blackboard to Plaintiffs showed for date of loss December 14, 2020, a replacement cost value of $104,603.96, actual cash value of $101,187.58, and subtracting the $10,000 deductible, showed a net claim amount of $91,187.58; and for date of loss January 19, 2021, a replacement cost value of $100,609.17, actual cash value of $85,650.02, and subtracting the $10,000 deductible, showed a net claim amount of $75,650.02. (Doc. 8-3 at 12-13.) Thus, the total net claim amount according to Blackboard's estimates was $166,837.60.

Plaintiffs explain that at the time each of the estimates was created, both their own and that provided by Blackboard, the power to the loss locations was still out and as such the full extent of the damage resulting from the theft claims was not ascertainable. (Doc. 8 at 2.) According to Plaintiffs, the initial Blackboard estimates were preliminary in nature and based on a mutual understanding that any additional damage discovered would be paid at a later date. (*Id.* at 2-3.) This is why Plaintiffs, when agreeing to submit the amended proofs of loss, expressly reserved

their rights to supplement the proofs of loss once the true extent of the damage was known. (*Id.* at 3.)

The email communications between Plaintiffs and Mr. Townley show the proofs of loss were submitted September 7, 2021, along with the Plaintiffs' reservation of the right to supplement or amend as additional information became known. (Doc. 8-6 at 4-5.) Then, on October 11, 2021, Mr. Townley emailed to inquire whether Plaintiffs had received payment for the loss. (*Id.* at 4.) Plaintiffs replied the same day that they had not received a payment or any other form of a response from Sedgwick since submitting the executed proofs of loss, and Mr. Townley responded that he left a message with a Mr. Mike Blanchet (Senior Account Consultant for Sedgwick) and would follow up when he heard back. (*Id.* at 3.)

On October 12, 2021, Plaintiffs emailed a demand letter, including the following statement:

> demand is hereby made that Sedgwick, as claims administrator to Blackboard, immediately accept coverage for the Claim and remit payment to the Insureds based on the presently-known damage in the amounts of $91,187.58 and $75,650.02 for the December and January losses respectively. Please be advised that failure to timely comply with our demand will result in the Insureds exploring all available remedies, including legal action.

(Doc. 8-8 at 4.)

On October 19, 2021, Plaintiffs followed up with Mr. Townley to see if he had received an update or any additional information. (*Id.* at 2-3.) The following day, Mr. Townley responded that he had not received a response to his inquiries on the claim status. (Doc. 8-7 at 2.)

The next communication did not occur until December 2, 2021, when Mr. Townley emailed Plaintiffs inquiring if they had received payment. (Doc. 8-6 at 2.) The following day, Plaintiffs replied that despite repeated attempts to contact Mr. Blanchet at Sedgwick, they had never received a response or payment from Sedgwick or Blackboard. (*Id.*)

**Legal Standard**

Rule 55 of the Federal Rules of Civil Procedure sets out a two-step procedure for obtaining a default judgment. First, when a party "has failed to plead or otherwise defend, . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a); *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998) (entry of default by the clerk must precede grant of default judgment under Rule 55(b)). Second, Rule 55(b) authorizes the clerk or the court to enter a default judgment. If the judgment sought is not for a sum certain, a "party must apply to the court for default judgment."

Fed. R. Civ. P. 55(b)(2). Rule 55 provides that the court may conduct hearings if necessary to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. *Id.*

## Discussion

The Court has reviewed Plaintiffs' Complaint, insurance policy, accompanying affidavits, and the documentation submitted in response to the Court's Order to supplement the record.[2] A hearing is not necessary. *See Stephenson v. El-Batrawi*, 524 F.3d 907, 915-16 (8th Cir. 2008) (hearing not necessary if there is sufficient evidence to support default judgment). The Court is satisfied that Plaintiffs have legitimate causes of action against Defendant under the insurance policy. Importantly, Plaintiffs have supported their request for damages with records detailing their losses related to the break-ins, their expenses related to this litigation, and additional documentation supporting their claims. (Docs. 6-1 to -6, 8, 8-1 to -14.) Accordingly, under these circumstances, Plaintiffs are entitled to default judgment in their favor.

## Conclusion

For the reasons stated above, Plaintiffs' motion for default judgment (Doc. 6) is **GRANTED**. The Court awards Plaintiffs as follows:

(1) Property damage losses in the amount of $399,268.54.

(2) Attorney's fees in the amount of $13,014.50.

**IT IS SO ORDERED.**

/s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: June 14, 2022

---

[2] During this review, the Court made an independent determination regarding its jurisdiction over both the subject matter and defaulted parties. The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 and specific personal jurisdiction over Defendant because of its business activities in the State of Missouri.