IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| S&B VENTURES, LLC | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BRAIN DEV 2, LLC, | ) | Case No. 4:21-cv-00791-RK |
|                 Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BLACKBOARD INSURANCE COMPANY, | ) | |
|                 Defendant. | ) | |

# ORDER

Before the Court is Defendant Blackboard Insurance Company's motion to set aside default judgment. (Doc. 12.) The motion is fully briefed. (Docs. 18, 19.) For the reasons set forth below, the motion is **GRANTED.**

## Background

### I. The Default Judgment

Plaintiffs filed their Complaint on November 3, 2021. (Doc. 1.) Defendant was served by mail pursuant to Federal Rule of Civil Procedure 4 and Missouri Supreme Court Rule 54.16. (Doc. 3.) Defendant acknowledged receipt of the summons on November 11, 2021. (*Id.*) Defendant failed to answer or otherwise respond to Plaintiffs' Complaint; thus, on December 20, 2021, the Clerk of the Court entered an Entry of Default. (Doc. 5.) Defendant further failed to answer or otherwise respond to Plaintiffs' motion for default judgment. Accordingly, the Court accepted the allegations in Plaintiffs' Complaint as true in entering default judgment for Plaintiffs (Doc. 9), those factual allegations are as follows:

Plaintiffs held an active insurance policy with Defendant from March 31, 2020, through March 31, 2021. (Doc. 1 at ¶ 12; Doc. 1-1 at 17.) Plaintiffs – S&B Ventures, LLC and Brain Dev 2, LLC – were both "Named Insured" in the insurance policy. (Doc. 1 at ¶ 14; *see also* Doc. 1-1 at 200.) The insurance policy was "an all-risk property policy which insure[d] against all types of direct physical loss or damage subject only to a handful of enumerated exclusions." (Doc 1 at ¶ 16.) Loss due to vandalism or theft by unknown third parties was not excluded under the terms

of the policy, although the policy did exclude theft by employees or authorized representatives. (*Id.* at ¶ 19; Doc. 1-1 at 42.)

Over a period of two months, Plaintiffs suffered two break-ins relevant to the instant insurance coverage action. (Doc. 1 at ¶¶ 3, 21, 23 n.1, 24.) The first break-in occurred on or about December 14, 2020, when individuals broke in through an exterior garage door, resulting in the theft of copper wiring and electrical components. (*Id.* at ¶ 21.) These individuals also "vandalized electrical, mechanical, and other equipment, including but not limited to power conduits and heating and cooling systems." (*Id.*) The second break-in occurred on or about January 19, 2021, resulting in the theft of the "remaining copper pipe and wiring from electrical closets." (*Id.* at ¶ 24.) The individuals responsible also "tore out the water lines, stole the fire extinguishers, took the valves and electrical meter, and gutted the remaining mechanical equipment for anything of value." (*Id.*)

Plaintiffs' insurance policy had two categories of "Covered Property" relevant here: Real Property and Personal Property. (*See id.* at ¶ 17.) Real Property included (1) building or structures; (2) temporary structures; and (3) permanently installed machinery, equipment, furniture, and fixtures. (*Id.*; Doc. 1-1 at 22.) Personal Property included (1) furniture and fixtures; (2) machinery and equipment (including contractor's equipment); and (3) merchandise, stock, supplies, raw materials, and finished goods. (Doc. 1 at ¶ 17; Doc. 1-1 at 22.)

After the break-ins, Plaintiffs "provided timely notice of the December 14 and January 19 theft losses to [Defendant] and requested indemnity coverage under the [Insurance] Policy." (Doc. 1 at ¶ 26.) Defendant "assigned the Claims to Sedgwick Risk Management ('Sedgwick') for investigation and handling." (*Id.* at ¶ 27.) After several months, and more than one site visit by Eddie Townley, an independent adjuster Defendant hired to inspect the loss location, Defendant "provided [Plaintiffs] with a preliminary estimate of the damages for the Claims and requested that the [Plaintiffs] submit amended sworn proofs of loss if they agreed with the amount of loss." (*Id.* at ¶¶ 36, 37, 40.) Plaintiffs "provided executed proofs of loss the following day." (*Id.* at ¶ 41.) As of November 3, 2021, Defendant "ha[d] not provided its coverage position to the [Plaintiffs] or remitted payment, despite the Policy's express condition requiring Blackboard to issue payment for covered damages within thirty (30) days of receiving signed proofs of loss." (*Id.* at ¶ 48; Doc. 1-1 at 48.) On or about February 10, 2022, Plaintiffs received two checks from York Risk Services Group, Inc. in the amount of $91,187.58 and $76,650.02. (Doc. 6 at ¶ 15.) Plaintiffs

2

believe these "payments were based on preliminary estimates of the then-known damages created by [Defendant] at the time of its site inspections in August 2021." (*Id.*) These payments have been credited to Defendant. (*Id.* at ¶¶ 13, 15.)

Plaintiffs seek a total judgment of $412,283.04 from Defendant. (*Id.* at ¶ 13.) This amount represents "unpaid property damage losses in the amount of $399,268.54, and attorney's fees and costs totaling $13,014.50." (*Id.*) In support of these damages, Plaintiffs submitted affidavits of Andrew Brain, co-principal of Plaintiffs, "attesting to the total property losses" and of Noah Nash, counsel for Plaintiffs, "attesting to the outstanding legal fees and costs incurred by the [Plaintiffs] in this action." (*Id.* at ¶ 14; Docs. 6-5, 6-6.)

After Plaintiffs filed a motion for default judgment, the Court ordered the record be supplemented as to the following matters:

> (1) The Complaint alleges "Blackboard, provided the Insureds with a preliminary estimate of the damages for the Claims and requested that the Insureds submit amended sworn proofs of loss if they agreed with the amount of loss." According to the Complaint, Plaintiffs then provided executed proofs of loss. Plaintiffs are ordered to submit documentation of:
>
> > a. the amounts that were reflected in the preliminary estimate and in these proofs of loss
> >
> > b. what was required from the parties under the Policy if there was disagreement as to the amount of loss
> >
> > c. whether the executed proofs of loss total $567,106.14 (the property damage losses amount sought in the motion for default judgment plus the amounts already paid by York Risk Services Group in February of 2022)
>
> (2) Plaintiffs are ordered to submit documentation of any communications that took place between the parties as to the amount of loss, amount of coverage, and any other matters relevant to the claims that form the subject matter of this case between the site visit(s) by Defendant's agent and the February 10, 2022 payments from York Risk Services Group.

(Doc. 7.) Plaintiffs supplemented the record accordingly on May 23, 2022. (Doc. 8.)

The preliminary estimates of the damages for the Claims provided by Blackboard to Plaintiffs showed for date of loss December 14, 2020, a net claim of $91,187.58 (consisting of a replacement cost value of $104,603.96 and actual cash value of $101,187.58 less the $10,000 deductible); and for date of loss January 19, 2021, net claim amount of $75,650.02 (consisting of

3

a replacement cost value of $100,609.17 and actual cash value of $85,650.02 less the $10,000 deductible).  (Doc. 8-3 at 12-13.)  Thus, the total net claim amount according to Blackboard's estimates was $166,837.60.

Plaintiffs explained that at the time each of the estimates was created, both their own and that provided by Blackboard, the power to the loss locations was still out and as such the full extent of the damage resulting from the theft claims was not ascertainable. (Doc. 8 at 2.)  According to Plaintiffs, the initial Blackboard estimates were preliminary in nature and based on a mutual understanding that any additional damage discovered would be paid at a later date. (*Id.* at 2-3.) This is why Plaintiffs, when agreeing to submit the amended proofs of loss, expressly reserved their rights to supplement the proofs of loss once the true extent of the damage was known. (*Id.* at 3.)

Plaintiffs submitted email communications between Plaintiffs and Mr. Townley that showed the proofs of loss were submitted September 7, 2021, along with the Plaintiffs' reservation of the right to supplement or amend as additional information became known. (Doc. 8-6 at 4-5.) Then, on October 11, 2021, Mr. Townley emailed to inquire whether Plaintiffs had received payment for the loss. (*Id.* at 4.)  Plaintiffs replied the same day that they had not received a payment or any other response from Sedgwick since submitting the executed proofs of loss, and Mr. Townley responded that he left a message with a Mr. Mike Blanchet (Senior Account Consultant for Sedgwick) and would follow up when he heard back. (*Id.* at 3.)

On October 12, 2021, Plaintiffs emailed a demand letter, including the following statement:

> demand is hereby made that Sedgwick, as claims administrator to Blackboard, immediately accept coverage for the Claim and remit payment to the Insureds based on the presently-known damage in the amounts of $91,187.58 and $75,650.02 for the December and January losses respectively.  Please be advised that failure to timely comply with our demand will result in the Insureds exploring all available remedies, including legal action.

(Doc. 8-8 at 4.)

On October 19, 2021, Plaintiffs followed up with Mr. Townley to see if he had received an update or any additional information. (*Id.* at 2-3.)  The following day, Mr. Townley responded that he had not received a response to his inquiries on the claim status. (Doc. 8-7 at 2.)

The next communication did not occur until December 2, 2021, when Mr. Townley emailed Plaintiffs inquiring if they had received payment. (Doc. 8-6 at 2.)  The following day,

4

Plaintiffs replied that despite repeated attempts to contact Mr. Blanchet at Sedgwick, they had never received a response or payment from Sedgwick or Blackboard. (*Id.*)

## II. Defendant's Motion to Set Aside Default Judgment

Defendant indicates that on July 25, 2022, Plaintiffs' insurance broker forwarded an email to Defendant from Sedgwick, notifying Defendant that default judgment was granted. (Doc. 12-4). Defendant then conducted an internal investigation to determine why it had no record of the summons and complaint. (Doc. 12-2). Defendant's investigation revealed the following information:

On August 23, 2020, Defendant submitted a Form 12 Uniform Consent to Service of Process Form through the National Association of Insurance Commissioners' ("NAIC") online portal to change its registered agent for service and the address to which any received service of process papers would be sent. (Doc 12-2 at ¶ 6.) In September 2020, Defendant attempted to amend the form again, but Defendant did not complete the final step of the process. (*Id.* at ¶ 12.) As a result, Defendant's form was placed in "amendment status," which made the form unreviewable to any state department of insurance that had not reviewed Defendant's August 2020 amendment. (*Id.* at ¶¶ 13-14.) The Missouri Department of Insurance was one of the affected states. (*Id.* at ¶ 13.)

Because of this error, the Missouri Department of Insurance sent copies of the summons and complaint to CT Corporation System, Defendant's previous registered service agent. (*Id.* at ¶¶ 15-16.) CT Corporation System was previously instructed to send any summons and service of process papers received on behalf of Defendant to former employees John Rooney and Candice Phillips via UPS Next Day Air and email. (Doc. 12-7.)

Defendant did not otherwise receive any mail relating to Plaintiffs' lawsuit at its PO Box in Shawnee Mission, Kansas, in November or December 2021. (Doc. 12-6 at ¶ 5.)

On August 26, 2022, Defendant filed entry of appearance and a motion to set aside the default judgment. (Doc. 11; Doc 12.)

## Legal Standard

Federal Rule of Civil Procedure 60(b) provides:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

5

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Ignorance or carelessness of an attorney is generally not cognizable as a reason justifying relief under Rule 60(b). *Cline v. Hoogland*, 518 F.2d 776, 778 (8th Cir. 1975) (citing *Hoffman v. Celebrezze*, 405 F.2d 833, 835 (8th Cir. 1969); *United States v. Thompson*, 438 F.2d 254, 256 (8th Cir. 1971)).

Excusable neglect under Rule 60(b)(1) specifically includes "late filings caused by inadvertence, mistake or carelessness." *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 388 (1993). The "equitable determination" of whether excusable neglect has been established considers several factors: (1) "the danger of prejudice to the non-moving party"; (2) "the length of the delay and its potential impact on judicial proceedings"; (3) "whether the movant acted in good faith"; (4) "the reason for the delay, including whether it was within reasonable control of the movant"; and (5) whether the movant has a meritorious defense. *Id.* at 395; *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998) (concluding the "existence of a meritorious defense continues to be a relevant factor after *Pioneer.*"). When determining if excusable neglect exists, the court takes into account "all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395. However, there is "strong judicial policy" against default judgments. *Marshall v. Boyd*, 658 F.2d 552, 554 (8th Cir. 1981).

**Discussion**

Defendant contends that it failed to timely respond because it failed to finalize its amendment to the NAIC portal when updating its registered service agent, resulting in the entry of default judgment. (Doc 12 at 3.) Because the amendment was not finalized, the Missouri Department of Insurance sent service of process papers to Defendant's former registered agent.

6

(*Id*). Defendant argues that its failure to finalize the amendment, which resulted in Defendant's unawareness of this litigation, constitutes excusable neglect. (*Id.* at 7.)

## I. Prejudice to the Plaintiff

Alleged prejudice to the plaintiff must be "concrete prejudice" for this factor to weigh against setting aside the default judgment. *Stephenson v. El-Batrawi*, 524 F.3d 907, 915 (8th Cir. 2008) (upholding district court's finding of prejudice because of "increased difficulties in discovery given the amount of time that has elapsed"); *Johnson*, 140 F.3d at 785 (explaining "prejudice may not be found from delay alone or from the fact that the defaulting party will be permitted to defend on the merits."). For example, "loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion" constitute sufficient prejudice to the plaintiff. *Johnson*, 140 F.3d at 785 (quoting *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990)).

Plaintiffs assert that setting aside the default judgment would result in prejudice because critical evidence has been destroyed. (Doc. 18 at 5.) Specifically, Plaintiffs explain that damages to the Loss Location have since been repaired, which has destroyed evidence that Plaintiffs could use to substantiate their claims. (*Id.*) Defendant disputes that the repairs have destroyed evidence, explaining that evidence of the damages has been preserved through inspections of the property conducted by the third-party claims adjuster and testimony from Plaintiffs' representatives or other relevant parties. (Doc. 19 at 6-7.)

Given the documentation generally required of insurance investigations, including photographic evidence of the damage, it is unlikely that all available evidence of the damage has been destroyed such that Plaintiffs would be prejudiced and unable to prove its case at this time should the default judgment be set aside. This factor weighs in favor of setting aside the default judgment.

## II. Length of Delay

Whether the length of delay is reasonable depends on when the Rule 60(b) movant discovered the mistake. *MIF Realty L.P. v. Rochester Assocs.*, 92 F.3d 752, 757 (8th Cir. 1996). For example, in *Union Pacific Railroad Co. v. Progress Rail Services. Corp.*, 256 F.3d 781 (8th Cir. 2001), the defaulting party, only three weeks after learning of the default and less than six months after the initial complaint was filed, filed a motion to set aside the default judgment. This

7

short delay, the Eighth Circuit explained, "[did not] undermine [the plaintiff's] ability to advance its claim." *Id.* at 783.

Plaintiffs filed their complaint on November 3, 2021. (Doc. 1 at 13.) Defendant learned of this litigation and default judgment on July 25, 2022, through its third-party claims adjuster. (Doc 12-4.) Defendant then filed its motion to set aside the judgment on August 26, 2022, approximately one month after default judgment was entered and nine months after Plaintiffs' initial complaint was filed. (Doc. 12 at 11.) Additionally, neither the discovery period nor a trial date has been set. If default judgment is set aside, the judicial proceedings could proceed without delay. *See Hartford Fire Ins. Co. v. Harris Co. of Fort Smith, Inc.*, 143 F. Supp. 3d 800, 807 (W.D. Ark. 2015) (finding no impact on judicial proceedings despite significant delay because both parties have "sufficient time to prepare for trial"). Given the short delay and lack of likely potential impact on judicial proceedings, this factor favors setting aside the default judgment.

### III. Good Faith

This factor distinguishes between "contumacious or intentional delay or disregard for deadlines and procedural rules, and a 'marginal failure' to meet pleading or other deadlines." *Johnson*, 140 F.3d at 784 (explaining contumacious or intentional delays are rarely excused); *see Hall v. TJ Cinnamon's, Inc.*, 121 F.3d 434, 435 (8th Cir. 1997) (finding bad faith when the defaulting party "chose to ignore [the] litigation."); *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856-58 (8th Cir. 1996) (finding "dilatory" and willful conduct when party failed to comply with pre-trial requirements and to respond to discovery orders).

Here, there is no evidence of bad faith, nor is there evidence of an intentional failure to complete the last step of the amendment process. As soon as Defendant learned of the litigation through its third-party claims adjuster, Defendant conducted an investigation to determine the cause of its failure to respond. (Doc. 12 at 4.) Defendant then promptly filed its motion to set aside the judgment. (Doc. 12 at 11.) Because Defendant's failure to finalize its amendment, which led to the entry of default judgment, was not in bad faith, this factor favors setting aside the default judgment.

### IV. Reason for Delay

The most important factor in determining whether to set aside the default judgment is the movant's reason for delay. *Union Pacific,* 256 F.3d at 783. This factor considers whether the

8

Case 4:21-cv-00791-RK    Document 20    Filed 01/25/23    Page 8 of 10

delay was in the reasonable control of the movant. *In re Payless Cashways, Inc.*, 230 B.R. 120, 139 (1999); *Pioneer*, 507 U.S. at 388.

Defendant explains its reason for delay was its inadvertent failure to finalize its Form 12 amendment with NAIC, which, if completed, would have updated its registered service agent. (Doc 12 at 3-4.) Plaintiffs' service of process papers were instead delivered to Defendant's former registered agent, who was then supposed to send the papers to the Defendant's former employees via mail and e-mail. (Doc. 12 at 3-5.) Plaintiffs contend Defendant's reason for delay, combined with Defendant's lack of explanation "as to why the inboxes of these former employees were not periodically reviewed or forwarded to another person within the company" amounts to negligence and carelessness. (Doc.18 at 7-8.) However, Plaintiffs' reliance on *Federal Enterprises v. Frank Allbritten Motors*, 16 F.R.D. 109, 110 (W.D. Mo. 1954), to support their claims is misplaced.

In *Federal Enterprises*, the defendant corporation attempted to change their registered service agent after their prior agent resigned by approving the change at a shareholder's meeting. *Id.* However, there was no evidence the defendant ever contacted the Missouri's Secretary of State to confirm the change. *See id.* at 111. Rather, the defendant's president only spoke with the defendant's attorneys and thought it was taken care of. *Id.* The defendant's president was informed of the litigation on January 27, 1954, one day before judgment was rendered on January 28, 1954, yet the defendant did not appear before the court, despite engaging attorneys. *Id.* at 113. This, the court held, was "a succession of careless and negligent acts which amount to inexcusable, not 'excusable' neglect." *Id.*

Here, Defendant's reason for delay is more accurately characterized as a simple recording error, which kept Defendant unaware of the lawsuit. *See Union Pacific*, 256 F.3d at 783 (setting aside default judgment when movant's error was not a mistake of law or negligent acts over a "long period of time despite receiving warnings about its omission."). Defendant did not neglect to inform NAIC that it was changing its registered agent altogether, nor did Defendant disregard its failure to complete the amendment process when Defendant became aware of the issue. (Doc. 12 at 4-5.) Defendant remained unaware of the litigation until after default judgment was entered, and once Defendant was aware of its error, Defendant promptly acted. (Doc. 12 at 4.) This factor weighs in favor of setting aside the default judgment.

V. **Meritorious Defense**

A meritorious defense exists when the evidence offered would "permit a finding for the defaulting party." *Johnson*, 140 F.3d at 785. While the evidence need not be undisputed, the alleged defense should be supported by specific facts or evidence. *Stephenson*, 524 F.3d at 914 (rejecting alleged meritorious defense because the Rule 60(b) movant "did not provide minimally adequate factual support to illustrate the potential viability of his asserted defenses"). Simply denying the allegations in the complaint or asserting the existence of a meritorious defense is not sufficient to establish a meritorious defense. *See id.*, 524 F.3d at 914. Here, Defendant explains that "if given the opportunity to defend against Plaintiff's claims upon the merits, [Defendant] will assert meritorious defenses including a legitimate dispute regarding the scope of Plaintiff's loss claim." (Doc. 12 at 8 n.1.) Defendant has done little more than generally point to the existence of a "legitimate dispute regarding the scope of Plaintiffs' loss claims." (Doc. 12 at 8 n.1.) Defendant must do more than rely on general assertions of a meritorious defense. Nonetheless, here, "[t]he underlying concern is whether there is some possibility that the outcome after a full trial will be contrary to the result achieved by the default." *Stephenson*, 524 F.3d at 914 (cleaned up). In view of the other factors in the context of this case, the Court does not find this factor dispositive. The Eighth Circuit has expressed a preference for "merits dispositions over default judgments" as applying a "basic principle[] of justice." *United States v. Real Props. Located at 7215 Longboat Drive (Lot 24)*, 750 F.3d 968, 975 (8th Cir. 2014) (citing *Marshall v. Boyd*, 658 F.2d 552, 554 (1981)). Having weighed and balanced the requisite factors, the Court finds Defendant has established excusable neglect sufficient to set aside default judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.

### Conclusion

For the reasons stated above, Defendant's motion to set aside default judgment (Doc. 12) is **GRANTED**.

**IT IS SO ORDERED.**

/s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: January 25, 2023